## AUSTIN BALDWIN & CO. v. UNITED STATES.

(Circuit Court, S. D. New York.    January 26, 1906.)

No. 4,013.

CUSTOMS DUTIES—CLASSIFICATION—DRESSED GRANITE—MONUMENTS IN SECTIONS—MINERAL SUBSTANCES.

    Monuments in sections, consisting of pieces of dressed granite intended to be assembled and erected as monuments without further manipulation, *held* dutiable as dressed granite, under Tariff Act July 24, 1897, c. 11, § 1, Schedule B, par. 118, 30 Stat. 159 [U. S. Comp. St. 1901, p. 1636], and not as articles composed of mineral substances, under paragraph 97 (30 Stat. 156 [U. S. Comp. St. 1901, p. 1633]).

On Application for Review of a Decision of the Board of United States General Appraisers.

The decision below, which is known as G. A. 6,026 (T. D. 26,334), affirmed the assessment of duty by the collector of customs at the port of New York.

The opinion of the Board of General Appraisers reads as follows:

McCLELLAND, General Appraiser. This protest involves the classification of certain granite monuments on four separate invoices. Those monuments described on the invoices numbered 15,552 and 15,553 were returned by the appraiser as "manufactures of marble," and those on invoices 15,554 and 15,555 were returned as "dressed granite"; but the evidence before us is conclusive that the merchandise is all of the same character, namely, granite, and, since the discrepancy in said returns in no way affected the rate of duty to which the merchandise is subject, it is wholly immaterial. Duty was assessed by the collector at the rate of 50 per cent. ad valorem under the provisions of Tariff Act July 24, 1897, c. 11, § 1, Schedule B, par. 118, 30 Stat. 159 [U. S. Comp. St. 1901, p. 1636], and it is claimed by the protestants that the said monuments should have been admitted to entry at the rate of 35 per cent. ad valorem, under the provisions of paragraph 97 of said act (30 Stat. 156 [U. S. Comp. St. 1901, p. 1633]). The paragraph under which duty was so assessed reads as follows: "118. Freestone, granite, sandstone, limestone, and other building or monumental stone, except marble and onyx, not specially provided for in this act, hewn, dressed, or polished, fifty per centum ad valorem." And paragraph 97, under which it is claimed duty should have been assessed, reads: "97. Articles and wares composed wholly or in chief value of earthy or mineral substances, or carbon, not specially provided for in this act, if not decorated in any manner, thirty-five per centum ad valorem; if decorated. forty-five per centum ad valorem."

From the record before us the inference is justified that, since there is no provision in the existing tariff law for monuments eo nomine, the theory of the protestants is that the monuments in question should have been classified as articles or wares composed of earthy or mineral substances. It is shown that the so-called monuments were imported in sections or pieces, ready to be put together after arrival in the United States, although it is apparent that some of the pieces of granite covered by the invoices are only parts of monuments. It is conceded by the protestants that the parts were all of granite, and that they were prepared abroad from specifications and drawings upon which orders were taken in the United States.

Questioned as to his understanding of the term "monuments," the only witness for the protestants testified: "Q. Just tell what a monument is understood to be in your trade? A. A monument is composed of a number of pieces of granite that are made according to a design or drawing, which is either cut or polished, or both, and is all ready to take to the cemetery and set it up on the plot. * * * Q. Are there two kinds of monuments or grave-

stones, one of which might be said to be decorated and the other not? A. In our particular trade, the monuments may be designated as plain polished, and others as partly dressed. The dressing is the ornamental work where the polish is cut away, leaving the design of leaves and ornamental designs." Page 6, minutes of January 12. The opinion of this witness evidently is that the several parts that go to make a completed monument, although imported separately, constitute a monument, notwithstanding that labor is necessary to put the parts together at the cemetery, and that cement or lead must be applied to the joints to keep out the moisture; but the contrary view is sustained by In re Crowley, 55 Fed. 283, 5 C. C. A. 109, G. A. 5,835 (T. D. 25,743) and Abstract 3,788 (T. D. 25,780).

In support of the Government's contention, John Feitner was produced as a witness. He was shown to have been a dealer in and manufacturer of monuments for 30 years. And he testified that granite is only recognized as crude as it comes in blocks from the quarry, and that the term "dressed," as applied to granite, means that labor has been put upon it to change it from the crude stone, and that the processes of transforming such crude granite into a monument are usually by the application of the peen hammer, polishing with emery or carborundum, and sometimes the use of felt to give it a high polish, and that all of these processes are included within the term "dressed" as applied to granite. As to the term "dressed," this witness further testified: "Q. The term 'dressed' is a familiar one in your business? A. Yes, sir; we use that when we ship stone. Dressed granite means when it is partly finished or altogether finished. Q. Are you familiar with the term 'hewn' in your business? A. Do not use that word. It is not a term used in our line. Q. The term 'cutting'? A. That is while it is being done—cutting granite; but the two stages are dressed and raw. Q. A monument generally consists of more than one piece of stone, does it not? A. Generally does. Q. Now, in your trade, is a monument in several parts recognized as dressed granite—a monument that has been submitted to any or all of these processes? A. Oh, yes; that is dressed unquestionably. Q. Is such a monument as was described in the last question bought and sold as dressed granite? A. Yes, sir. Q. You say that 'dressed granite' in your business is a well-known commercial term—buying and selling by that name? A. Yes, sir."

Another witness on behalf of the Government was shown to have had 12 years' experience in the granite monument and marble business, and his testimony was corroborative of that of the witness Feitner in all essential details.

In view of the evidence before us, it does not seem reasonable that the merchandise should be classified under what might be termed the catch-all provision contained in said paragraph 97. Certainly such classification would not be justified, unless it is satisfactorily established that the language of said paragraph is more specific, as applied to the merchandise under consideration, than that contained on said paragraph 118, under which classification was made.

In Dingelstedt et al. v. U. S., 91 Fed. 112, 33 C. C. A. 395, it was held that arc-light carbons, which had been decided by the Board to be subject to duty under the provision in paragraph 86 of the tariff act of 1894, 28 Stat. 513, c. 349, for "all articles composed of mineral substances * * * not specially provided for," were not so dutiable, but should have been assessed for duty under the provision in section 3 of said act [28 Stat. 547] for "articles manufactured in whole or in part, not enumerated in the act." In construing the words "all articles composed of mineral substances," the court said: "If the phrase relied on were to be given the broad construction contended for, it would be wholly unnecessary to provide for lava tips; they would be included in the general phrase. Evidently Congress understood that this general phrase was used by it in such a restricted sense that it would not cover the lava tips, and therefore they were specially provided for. Construed as above indicated, the paragraph would not cover the carbons now before the court."

The court having thus in effect held that the blanket provision for "all articles manufactured, in whole or in part, not provided for," was more specific than that for "articles composed of earthen or mineral substances," there would seem to be no escape from the conclusion that the provision in paragraph

118 for "freestone, granite, * * * and other building or monumental stone, * * * not specially provided for in this act, hewn, dressed, or polished," is more specific when applied to the merchandise under consideration, especially in the light of the evidence adduced, than the provision in paragraph 97, which is invoked by the protestants. If said paragraph 118 had fixed a uniform rate of duty on manufactures of the various kinds of stone therein mentioned, it would not have been open to question that the monuments involved should be classified as manufactures of granite, and since the processes of cutting, dressing, and polishing, to which the granite out of which these monuments are made has been subjected, were unquestionably distinct processes of manufacture, we are of the opinion that they are specially provided for in said paragraph 118.

The protest is therefore overruled, and the decision of the collector affirmed.

Walden & Webster (Henry J. Webster, of counsel), for importers.
D. Frank Lloyd, Asst. U. S. Atty.

HAZEL, District Judge. The collector charged a duty upon the importation of 50 per centum ad valorem, under paragraph 118 of the existing tariff act (Act July 24, 1897, c. 11, § 1, Schedule B, 30 Stat. 159 [U. S. Comp. St. 1901, p. 1636]). The appraisers returned the articles as dressed granite. The importers claim that the articles consist of monuments and pieces of monuments made from granite, and are therefore dutiable as articles (undecorated) composed wholly or in chief value of mineral substances, at 35 per centum ad valorem. I have read all the testimony and concur in the opinion of the Board of General Appraisers.

The decision is affirmed.